**SO ORDERED.**

**SIGNED this 26th day of July, 2018.**

Robert E. Nugent
United States Bankruptcy Judge

---

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANASAS**

| | |
|---|---|
| **IN RE:**<br><br>**MICHAEL RAY CAPPS,**<br><br>**Debtor.** | **Case No. 16-10141**<br>**Chapter 7** |
| **IN RE:**<br><br>**CYBERTRON INTERNATIONAL, INC.,**<br>**Plaintiff,**<br>**vs.**<br><br>**MICHAEL RAY CAPPS,**<br><br>**Defendant.** | **Adv. No. 17-5090** |

**MEMORANDUM OPINION**

Can the beneficiary of a covenant not to compete (CNC) enforce it against a chapter 7 debtor after discharge? Assuming the covenant is enforceable under state

law, whether it amounts to a claim in bankruptcy and whether it is an executory contract governed by 11 U.S.C. § 365 is a matter of bankruptcy law. When Michael Capps sold his interest in Information Technologies of Kansas, Inc. to Cybertron International in September of 2015, Cybertron hired him. In two separate agreements Capps executed – a Restrictive Covenants Agreement and an Employment Agreement, he promised not to compete with Cybertron for five years, not to disclose any of Cybertron's proprietary information, and not to solicit its customers. After Capps filed bankruptcy in February of 2016, Cybertron dismissed him. In a state court action commenced April 10, 2017, Cybertron claimed that Capps violated all three promises after he was terminated and obtained a temporary injunction restricting Capps' work in the information technology industry in Cybertron's market area. Capps argues that his CNC and other obligations were discharged in his bankruptcy case and that Cybertron's lawsuit violates § 524's discharge injunction. He also says that, in any event, the obligations are contained in executory contracts that have been rejected, negating their effect.

But breaches of CNCs that occur post-petition are not claims that are discharged. Nor are CNCs executory contracts. If the CNCs are enforceable under Kansas law, and if Capps breached any of them, Cybertron's rights to injunctive relief and liquidated damages against Capps are not discharged and its actions to

enforce the Agreements do not violate the discharge injunction. Cybertron is entitled to a declaratory judgment to that effect.[1]

**<u>Facts</u>**[2]

Integrated Technologies of Kansas, Inc. (ITK) and Cybertron International, Inc. (Cybertron) were competitors. Michael R. Capps was president and controlling shareholder of ITK. In September of 2015, ITK agreed to sell its customer accounts to Cybertron. Capps was to become a Vice President of Cybertron and to receive minority shares in Cybertron. As part of the transaction, Capps signed an Employment Agreement and a Restrictive Covenants Agreement (together, the Agreements), in which he agreed not to compete with Cybertron, not to disclose Cybertron's proprietary information (including whatever information it bought from ITK), and not to solicit Cybertron's customers for a period of five years within Cybertron's market area.[3] Capps filed a Chapter 7 bankruptcy on February 4, 2016 and received his bankruptcy discharge on May 16, 2016. Cybertron fired him on June 2, 2016. The following April, Cybertron sued Capps in Kansas state court to enforce the Agreements and sought an injunction against his continuing violation of

---

[1] Eric W. Lomas appears as counsel for Cybertron International, Inc. Martin Peck appears as counsel for Michael Capps.

[2] The parties submitted lengthy and detailed stipulations of fact, *see* Adv. Doc. 36. This section seeks to summarize those stipulations and highlight those matters most relevant to deciding Cybertron's complaint on the merits. The parties stipulate to this Court's jurisdiction and consent to entry of a final judgment in this adversary proceeding. Notwithstanding the parties' stipulation, the Court examines its jurisdiction at pp. 4-6, *infra.*

[3] Ex. 2, ¶s 4-6 – Restrictive Covenants Agreement; Ex. 3, ¶s 7-9 – Employment Agreement.

the restrictive covenants they contain. All of Capps's alleged violations of the restrictive covenants occurred after he filed bankruptcy. The Restrictive Covenant Agreement provides that if Capps violated the covenants, Cybertron would be entitled to an injunction and liquidated damages of $50,000 per violation.[4] The state court granted a temporary injunction on May 31, 2017.[5] It remains in effect with the unfortunate but predictable effect that Capps cannot work in his chosen field of information technology in Cybertron's market area.

Cybertron filed this action for a declaratory judgment that Capps's obligations under the Agreements were not discharged and that its enforcement efforts did not violate the discharge injunction.[6] The parties agreed to submit this matter to me on stipulated facts and briefs. Cybertron's complaint should be granted.

## Analysis

### The bankruptcy court has jurisdiction of this declaratory judgment action.

Though Fed. R. Civ. P. 57 does not apply in bankruptcy court, Fed. R. Bankr. P. 7001(9) makes actions for declaratory judgments adversary proceedings. A declaratory judgment is a remedy for an underlying cause of action, not a substantive claim for relief.[7] The Declaratory Judgment Act of 1934, 28 U.S.C. §

---

[4] Ex. 2, ¶s 7-8. The Employment Agreement also provides for injunctive relief and damages for breach of the covenants contained in Sections 7, 8, and 9 of the Employment Agreement. Ex. 3, ¶ 10.
[5] Ex. 6.
[6] Adv. Doc. 1.
[7] *In re Brinson,* 485 B.R. 890, 904 (Bankr. N.D. Ill. 2013).

2201, provides that declaratory judgments may only be issued by "courts of the United States," courts whose judges serve for life or during their good behavior. Though bankruptcy judges do not enjoy that privilege, the case law recognizes bankruptcy courts' authority to grant declaratory judgments.[8] The Declaratory Judgment Act does not, however, confer subject matter jurisdiction on bankruptcy courts; the plaintiff must establish an actual controversy and an independent basis for federal subject matter jurisdiction.[9]

28 U.S.C. § 1334(a) grants the district courts original and exclusive jurisdiction of all cases under Title 11 and non-exclusive jurisdiction of civil proceedings arising under Title 11, or arising in or related to cases in Title 11. The district courts are authorized to refer all such matters to the bankruptcy judges sitting in their districts by 28 U.S.C. § 157(a). The District of Kansas has made a general referral of those matters to the bankruptcy judges here by standing order and local rule.[10] This adversary proceeding seeks a declaration that Cybertron's enforcement of the restrictive covenants against Capps does not violate § 524's

---

[8] *See In re Brinson,* 485 B.R. 890, 903; *In re City of Cent. Falls, R.I.,* 468 B.R. 36, 44 (Bankr. D. R.I. 2012); *In re Joey's Steakhouse, LLC,* 474 B.R. 167, 184 (Bankr. E.D. Pa. 2012); *In re Kings Fall Power Corp.,* 185 B.R. 431, 436-37 (Bankr. N.D. N.Y. 1995).

[9] *See In re Quigley Co., Inc.,* 361 B.R. 723, 735-36 (Bankr. S.D. N.Y. 2007); *In re Kings Fall Power,* 185 B.R. at 438-39 (bankruptcy court had subject matter jurisdiction over dispute whether contractual subordination clause in ground lease that had not been assumed could be enforced); *In re IPDN Corp.,* 352 B.R. 870, (Bankr. E.D. Mo. 2006) (Declaratory Judgment Act is a procedural, not a jurisdictional, statute).

[10] *See* D. Kan. Rule 83.8.5(a); Standing Order No. 13-1, D. Kan. Amended Standing Order of Reference (June 24, 2013) published in United States District Court for the District of Kansas Rules of Practice and Procedure (March 17, 2018).

discharge injunction. Having issued Capps's discharge, this Court has authority to interpret and enforce it.[11] I also have core jurisdiction over proceedings to determine whether Capps's obligations under the Agreements terminated upon entry of his bankruptcy discharge.[12] The Court therefore has an independent basis for exercising subject matter jurisdiction and Fed. R. Bankr. P. 7001(9) authorizes this adversary proceeding for declaratory relief.

**Restrictive covenants are enforceable under Kansas law.**

The Kansas appellate courts have long approved entering into and enforcing covenants against competition and similar restrictions as part of Kansans' freedom of contract so long as the covenants meet four tests.[13] The restraint must (1) protect a legitimate business interest of the employer; (2) not impose an undue burden on the employee; (3) not injure the public welfare; and (4) be reasonable both as to its duration and its geographical limitations. In this case, Cybertron asserts that Capps's alleged actions in soliciting its customers, using its confidential information, and competing against it within the five-year term of his contract and within Cybertron's market area all violate the Agreements. In the Agreements, Capps consented to the entry of an injunction against these actions. In addition, the

---

[11] *See Travelers Indemnity Co. v. Bailey,* 557 U.S. 137, 151 (2009); *Local Loan Co. v. Hunt,* 292 U.S. 234, 239-41 (1934) (bankruptcy court has authority to determine the effect of discharge order); *Alderwoods Group, Inc. v. Garcia,* 682 F.3d 958, 966-67 (11th Cir. 2012) (Court that enters discharge injunction retains jurisdiction to enforce its order).
[12] *See* 28 U.S.C. § 157(b)(2)(A), (I) and (O); Fed. R. Bankr. P. 7001(6) and (9).
[13] *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 762–63, 112 P.3d 81 (2005).

Restrictive Covenant Agreement provides for the payment of liquidated damages of $50,000 per occurrence as a cumulative remedy. Kansas law allows parties to stipulate to a set amount of damages for breach of an agreement if the provision is for liquidated damages and isn't a penalty.[14] Anyone challenging a liquidated damages provision has the burden of proving that it is unenforceable. To determine that, courts look at the whole contract, the positions of the parties, and the circumstances.

> A liquidated damages provision will be enforced if (1) the amount stipulated is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss if a party breaches the contract, and (2) the nature of the transaction is such that actual damages resulting from the breach would not be easily or readily determinable.[15]

The provision will be judged penal if it bears no relation to the actual injury caused by the breach.

For this action's purposes, I assume without deciding that the Agreements' restrictive covenants and damages provisions are enforceable at Kansas law.[16] My role is limited to determining whether Capps's obligations under the Agreements are "claims" as defined in the Bankruptcy Code and, if so, whether the debts that comprise those claims have been discharged. I also consider whether the covenants

[14] *Wichita Clinic, P.A. v. Louis*, 39 Kan. App. 2d 848, 861–62, 185 P.3d 946 (2008).
[15] *Id.* at 862. *See also Carrothers Const. Co., L.L.C. v. City of South Hutchinson,* 288 Kan. 743, 757-58, 207 P.3d 231 (2009) (A prospective analysis is the sole basis for evaluating whether the liquidated damages are reasonable).
[16] Nothing in this Order should be construed as a preclusive finding about the validity or enforceability of those provisions, or whether Capps violated them.

are executory contracts that the trustee rejected by inaction and rendered them unenforceable against Capps after discharge.

**Capps' restrictive covenant obligations are not "claims" in his bankruptcy and were not discharged.**

Capps's obligations under the Agreements are not claims because they do not give rise to a right to payment. Even if they did, his alleged violations occurred after the bankruptcy petition date.

A "claim" is defined in the Bankruptcy Code as a—

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[17]

In determining whether an obligation forms the basis for a claim under this definition, courts consider whether complying with the obligation involves the expenditure of money.[18] In *Kennedy v. Medicap Pharmacies, Inc.*, the Sixth Circuit Court of Appeals noted that, while the breach of a covenant not to compete gives rise to an "equitable remedy," it is not a claim because it cannot be remediated by mere money. The equitable remedy is available only because the enforcing party has no adequate remedy at law, meaning there arises no right to payment on the enforcer's part. The Sixth Circuit noted that some bankruptcy courts have reached

---

[17] 11 U.S.C. § 101(5).
[18] *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496–97 (6th Cir. 2001).

the contrary conclusion, holding that because the enforcing party could choose *either* damages or injunctive relief, the obligation is an equitable right that "gives rise to a right to payment."[19] In concluding that covenant breaches are not claims, the Sixth Circuit followed the Seventh Circuit where that court held that since Indiana law only permits an injunction for violating a covenant not to compete when damages would not afford an adequate remedy, the injunction demand did not constitute a claim.[20] Significantly, in *Udell*, the Seventh Circuit also concluded that the availability of liquidated damages *in addition* to injunctive relief, did not render the right to equitable relief for breach of performance of a non-compete covenant a claim.[21]

As noted before, Kansas law allows for the injunctive enforcement of restrictive covenants whether or not liquidated damages are provided for in the agreement. In the *Idbeis* case, a surgical center sought to enjoin a group of surgeons from joining a competing practice group. Each had signed restrictive covenants, but only one doctor, Idbeis, had an agreement that gave him the option to pay liquidated damages over a period of years as a form of buyback in lieu of not competing. The Kansas Supreme Court confirmed that the restrictions were enforceable by injunction, but that Dr. Idbeis could pay those damages and continue

---

[19] *See, e.g., Maids International, Inc. v. Ward (In re Ward)*, 194 B.R. 703, 712 (Bankr. D. Mass. 1996).

[20] *Matter of Udell*, 18 F.3d 403 (7th Cir. 1994).

[21] *Id.* at 408. In the Cybertron-Capps Restrictive Covenant Agreement, the remedy of liquidated damages is in addition to injunctive relief. *See* Ex. 2, ¶ 8.

to compete.[22] By contrast, Capps's non-monetary obligations cannot be ransomed with payments. When he signed the Cybertron agreements, Capps agreed that should he violate either the CNC contained in the Employment Agreement or the Restrictive Covenants Agreement, Cybertron would be entitled to injunctive relief and its seeking that relief would not amount to an election of remedies.[23] His duties not to compete, solicit customers, or disclose Cybertron's proprietary information continue regardless of whether he is assessed damages for prior violations or not. The Agreements expressly provide for "survival" of the covenants and obligations and remain in full effect upon termination of his employment.[24] As such, those duties themselves give rise to an equitable remedy that doesn't necessarily "give rise to a right to payment." They are not "claims" as the Bankruptcy Code defines that term.[25]

Even if they were, these obligations could not be "claims" because they did not arise before Capps filed his bankruptcy petition. It is stipulated that "all of Capps's alleged violations of the Restrict Covenants Agreement and Employment Agreement occurred after the Petition Date."[26] Section 502(b) provides that claims are allowed "as of the date of the petition." While the Agreements were executed before the petition date, the conduct that allegedly violated the Agreements occurred after it. Tenth Circuit precedent holds that a claim arises when the

---

[22] *Idbeis*, 279 Kan. 755, 775.
[23] Ex. 2, ¶ 7; Ex. 3, ¶ 10.
[24] Ex. 2, ¶ 9; Ex. 3, ¶ 23.
[25] *See In re Hruby,* 512 B.R. 262, 267 (Bankr. D. Colo. 2014).
[26] Doc. 36, ¶ 20.

culpable conduct upon which the claim is based occurs.[27] The alleged breaches of the covenants occurred after the petition date. Even if Capps's breaches of the restrictive covenants could be monetized, any monetary remedy for those breaches would not be allowable as a claim; at best the breaches would support an administrative allowance under § 503, but only to the degree that incurring them benefitted Capps's bankruptcy estate.

Because Capps's continuing obligations under the Agreements are not claims and the alleged breaches occurred post-petition, those obligations were not discharged. Section 727(b) provides that "all debts that arose before the date of the order for relief …." are discharged in chapter 7.[28] "Debt" is defined in § 101(12) as "liability on a claim." If an obligation is not a claim under the Code, it cannot be a debt, either. Since the parties stipulate that the alleged breaches occurred after the petition date, they fall outside the umbrella of Capps's discharge.

**Capps's covenant obligations are not executory contracts.**

Finally, Capps argues that the Agreements are executory contracts that have been rejected because of the trustee's inaction and their rejection frees him of his duties under them. Section 365 provides for the assumption or rejection of an executory contract. The trustee may assume or reject an executory contract of the

---

[27] *See Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269 (10th Cir. 2002) (Court adopts the "conduct" theory of claim origination). *See also, e.g., In re Marshall*, 302 B.R. 711, 715 (Bankr. D. Kan. 2003) and *Dold v. Rainbows United, Inc. (In re Rainbows United, Inc.)*, 547 B.R. 430, 436 (Bankr. D. Kan. 2016).
[28] 11 U.S.C. § 727(b).

debtor.[29] In a chapter 7 case, if the trustee doesn't assume an executory contract within 60 days after the order for relief, the contract is deemed rejected.[30] If a contract is rejected, it is deemed to have been breached immediately before the date of the petition.[31] Whatever damages that breach occasioned would be claims against the debtor's bankruptcy estate. The *trustee's* statutory duty to perform the obligations of the debtor under the contract ends when the contract is rejected.[32] Note that nothing in § 365 provides for the release of the *debtor* from any obligations; rather, that section apportions and limits rights, duties, and liabilities among the debtor's contracting party and the bankruptcy estate. The case law recognizes this distinction.[33] Thus, even if the Restrictive Covenant Agreement were an executory contract, which it is not, its deemed rejection doesn't relieve Capps from complying with the CNC and other restrictive covenants.

---

[29] But the trustee may not assume contracts for personal services. *See* 11 U.S.C. § 365(c)(1).

[30] 11 U.S.C. § 365(d)(1). The commencement of a voluntary bankruptcy case by filing a petition constitutes the "order for relief." *See* § 301(a).

[31] 11 U.S.C. § 365(g)(1).

[32] 11 U.S.C. § 365(d)(3).

[33] *See In re Bergt,* 241 B.R. 17, 21-22 (Bankr. D. Alaska 1999) (effect of trustee's rejection of executory contract does not terminate the contract; it is merely trustee's election that the estate not assume the obligation of debtor under a contract as an administrative expense); *In re Hall*, 415 B.R. 911, 922 (Bankr. M.D. Ga. 2009) (rejection of executory contract does not terminate, cancel or rescind contract; rejection frees the bankruptcy estate from the obligation to perform); *In re Alongi,* 272 B.R. 148, 153-54 (Bankr. D. Md. 2001) (rejection of executory contract does not terminate the contract or alter substantive rights of parties thereto; it only means that the bankruptcy estate will not become a party to the contract; covenant not to compete survived chapter 7 debtor's discharge).

The Restrictive Covenant Agreement is not an executory contract. Capps's argument that "there is no contract to breach" is simply not correct because it relies on the Agreement being "executory" and having been rejected. As noted above, a rejection doesn't terminate the Agreement. As Capps's brief points out, the Tenth Circuit Court of Appeals has adopted the so-called "Countryman definition" of executory contracts that holds a contract is executory for § 365's purposes where "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other."[34] Cybertron owes no bilateral obligation to Capps under the Restrictive Covenant Agreement. Capps asserts that because Cybertron had a duty to pay ITK for the business it purchased under the sale agreement, Cybertron owed Capps, a legally distinct person, an unperformed duty. In fact, the only duty Cybertron owed Capps was to compensate him for his work under the Employment Agreement. That duty expired when Capps was terminated. Nothing Cybertron did "excuses" Capps's continuing duties under the separate Restrictive Covenant Agreement because, by its very terms, that Agreement remained in effect even after his departure from Cybertron. The Restrictive Covenant Agreement was not "executory" on the petition date.[35] It was

[34] *In re Baird*, 567 F.3d 1207, 1210 (10th Cir. 2009).

[35] *See In re Schneeweiss,* 233 B.R. 28, 32 (Bankr. N.D.N.Y. 1998) (Contract not to compete is non-executory where the covenant not to compete is the entire, bargained-for contract under which one party must refrain from competing.).

not (and could not be) rejected under § 365. Capps remains obligated to comply with the covenants in the Restrictive Covenants Agreement.

**Conclusion**

Cybertron's right to equitable relief in the state case to enforce the restrictive covenants is not a claim in Capps's bankruptcy and was not discharged. His alleged liabilities for acts committed post-petition were likewise not discharged and may be pursued in the state court case. No order of this Court nor bankruptcy law provision bars Cybertron from pursuing its state law claims against Capps. The Court emphasizes that it makes no determination on the merits of Cybertron's claims asserted against Capps in the state court lawsuit.

Cybertron is entitled to judgment on its complaint declaring that Capps's obligations under the Agreements are not "claims" under the Bankruptcy Code, were not discharged in his chapter 7 bankruptcy because the alleged violations occurred postpetition, and that Cybertron's maintenance of the state court action against Capps for alleged violation of the restrictive covenants does not violate the discharge injunction provided by 11 U.S.C. § 524. A Judgment on Decision will be issued today.

# # #